[No. 10344. Department Two. September 18, 1912.]

SEATTLE, RENTON & SOUTHERN RAILWAY COMPANY, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.[1]

STREET RAILWAYS—RIGHT OF WAY—DEEDS—CONSTRUCTION. Deeds or contracts for a street railroad right of way, providing for the execution of such further grant as may be necessary after the construction of the road, are merged in a subsequent right of way deed given in pursuance of the former contracts, and referring to an unrecorded plat which dedicated streets and reserved a right of way therein as given in the subsequent deed; especially where such deed leased the right to maintain the road as already constructed until the street should be graded, at which time the deed required the company to remove its tracks to the graded street.

SAME—RIGHTS BY PRESCRIPTION—PERMISSIVE USE. In such case, the use of the lands on which the road was constructed, was a permissive use, and the payment of taxes thereon by the railroad company does not indicate an adverse holding.

DEDICATION—PLATS—STREETS — VACATION — NONUSER — RIGHT TO QUESTION—ESTOPPEL — STREET RAILWAYS — EASEMENTS. A railroad company having only an easement in a street, cannot object to grading the street on the ground that the street was abandoned by five years' nonuser and failure to open it, the abutting property owners not objecting; and the company having accepted an easement in the street and agreed to move its tracks thereto when the street was graded, it is estopped to question the right to grade the street.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered August 22, 1911, in favor of

[1]Reported in 126 Pac. 531.

the defendant, after a trial on the merits before the court, in an action for an injunction.    Affirmed.

*Preston & Thorgrimson*, for appellant.

*James E. Bradford, Howard D. Hughes*, and *Ralph S. Pierce*, for respondent.


MOUNT, J.—The plaintiff brought this action to enjoin the city of Seattle from grading Rainier avenue and filling upon the roadbed and tracks of the railway of the plaintiff from a point on Fifty-seventh avenue north, in said city, along Rainier avenue southward for a distance of about one mile, to the city limits.    The complaint is based upon allegations to the effect that the city has no right to grade the avenue, and that such grade would damage the plaintiff company.    At the conclusion of the trial in the court below, the relief prayed for was denied, and a judgment was entered for the defendant.    The plaintiff has appealed.

It appears from the evidence in the case that, on March 18, 1889, Charles Waters, who then was the owner of the land upon which appellant's railway is now located, granted to Andrew C. Thompson and his assigns the right to construct a suburban railroad across his land to a point on Lake Washington.    A certain time was fixed within which the line should be definitely located, and it was agreed that, as soon as the road was located and constructed over the premises, Mr. Waters would execute "such further grant or right of way as shall be necessary for the security of said Andrew C. Thompson or his assigns."    A part of the road was thereafter constructed.    Mr. Waters, on June 18, 1891, platted his land into lots, blocks and streets.    The plat was designated Rainier Beach.    The dedication recited that the streets, etc., were dedicated to the use of the public forever, "except in so far as may be affected by the right of way granted to the Rainier Avenue Electric Railroad Company by deed of even date herewith."    Rainier avenue was designated on the

plat as a street eighty feet in width. On the same date, Mr.
Waters executed a deed to Rainier Avenue Electric Railway
Company, the predecessor of the appellant. This deed
granted to the railway company,

"A right of way and strip of land thirty feet in width,
lying one-half thereof on each side of the center line of
Rainier avenue, and extending the whole length thereof in
the unrecorded plat of Rainier Beach, as surveyed by Thomp-
son and White, this day dedicated by Charles Waters. This
conveyance, so far as affects that part of Rainier avenue
extending from the present terminus of the Rainier Avenue
Electric Railway to the eastern boundary of said Rainier
Beach, is conditional upon the said party of the second part,
its successors and assigns, building or causing to be built
thereon a single or double track of railway within fifteen
years of date hereof. The party of the first part does here-
by, for the sum of one dollar and other valuable considera-
tions, receipt whereof is hereby acknowledged, lease unto the
said party of the second part, its successors and assigns, a
strip of land thirty feet in width lying one-half thereof on
each side of the center line of the railway of said second party
as now located and constructed through and along the lands
embraced in said unrecorded plat of Rainier Beach until
Rainier avenue adjacent thereto shall have been graded,
when this lease shall terminate. It is agreed that in the
event of the said party of the second part, its successors and
assigns, constructing a railway from the present Lake Wash-
ington terminus of said Rainier Avenue Electric Railway to
the easterly boundary of said Rainier Beach, it may be built
within the bounds of Rainier avenue over the most convenient
course thereon until such time as said part of said Rainier
avenue shall have been graded, when such railway is to be
moved to within the bounds of the right of way and strip of
land thirty feet in width heretofore granted."

This deed was accepted by the railroad company and
placed of record, and the road was constructed, following
the general course of Rainier avenue, but not within the
thirty-foot strip. It followed the avenue in places, crossed
it in other places, and in certain places was wholly without
the avenue. After the railway was thus constructed and

in operation in the year 1907, the territory embraced within the plat of Rainier Beach was annexed to the city of Seattle. Thereafter, and in 1910, the city of Seattle, by ordinance, provided for grading the westerly twenty-five feet of Rainier avenue and other streets. Ordinances were also passed fixing the grades of these streets. In some places these grades upon Rainier avenue varied in depth from eight to sixteen feet. The grading of these streets and avenues will necessitate the removal of the railway tracks upon the thirty-foot strip described in the deed as above stated, and will interfere with the operation of the railway, and will necessitate the expenditure of a large amount of money, estimated at $50,000, to place the railway within the thirty-foot right of way. The city is threatening to grade this street upon the grade proposed by the ordinances. Appellant claims that it has a right to have its railway tracks remain undisturbed, for the following reasons:

"(1) By virtue of the right of way deeds executed March 18, 1889, by the owner of the land, Charles Waters, and afterwards assigned to the Rainier Avenue Electric Company; (2) by virtue of the deed from Charles Waters, dated June 18, 1891, to the Rainier Avenue Electric Company, and the reservation contained in the plat of Rainier Beach, filed September 24, 1891; (3) by virtue of having taken possession of and appropriated the land, and having remained in possession thereof without objection from the owner, of a portion of the road for a period of more than twenty years, and of the remainder for a period of more than fifteen years, and during such time having been assessed and paid taxes upon its right of way as a railroad company."

The deeds of March 18, 1889, show upon their face that they were contracts for a right of way. At that time the road was not constructed and was not definitely located across the land of Mr. Waters. The deeds were conditional upon the beginning of construction within a given time. They also provided that, when the road was located and constructed, the grantor would "execute such further grant or

right of way as shall be necessary for the security of said Andrew C. Thompson or his assigns." These deeds were never recorded. Afterwards the deed of June 18, 1891, above quoted from, was executed, delivered and recorded. This latter deed was given in accordance with the provisions of the former deeds, and the whole contract was merged in the latter deed. This latter deed was executed on the same day that the plat of Rainier Beach was dedicated. It was referred to in that dedication. The deed upon its face refers to the unrecorded plat of Rainier Beach, and grants a right of way thirty feet in width upon the center of Rainier avenue described by that plat.

It seems plain that the grantee took with notice of the plat and by virtue of the deed, and that the provisions of the former contracts or deeds were merged in the latter deed. Mr. Waters, no doubt, might grant such right of way as pleased him over his own land. Conceding that he could, at the time he dedicated the street to the public, reserve or grant to the railroad company a perpetual easement in the center of the street for a right of way for a railroad, he could also attach such conditions thereto as the parties might agree upon, and which might not affect the reasonable use of the street by the public. The parties did so agree, and stated in the deed which contained the agreement that the railroad "may be built within the bounds of Rainier avenue over the most convenient course thereon, until such time as said part of Rainier avenue shall have been graded, when such railway is to be moved to within the bounds of the right of way and strip of land thirty feet in width heretofore granted." This deed, in short, provided that the railway might occupy the land upon which it was then constructed, until such time as the avenue was graded, when it should be removed to the thirty-foot strip. There can be no escape from the conclusion that the prior deeds and their provisions were clearly merged in the latter deed which was accepted by the railway company, and that company and its successors are bound

by its provisions. The use of the land upon which the railroad was constructed was a permissive use by the terms of the deed. The fact that taxes were paid upon the right of way by the railway company did not change the nature of that use or indicate an adverse holding.

It is argued by appellant that Rainier avenue has been vacated by operation of law, for the reason that it was not opened or cleared as a street within five years after the plat was filed. *Murphy v. King County*, 45 Wash. 587, 88 Pac. 1115, is cited to sustain this contention. The appellant in this case cannot raise that question, because it does not own the street or property abutting upon the street. Appellant has only an easement within the street. This street is within the corporate limits of the city of Seattle. If the property owners along the street consent thereto, or make no objection, the city has undoubted right to improve the street. The appellant, having accepted an easement upon the street and agreed to remove its tracks thereon when the street is graded, is estopped to question the right of the property owners or the city to make the grade. We are satisfied, therefore, that the trial court properly denied the relief sought.

The judgment is affirmed.

CHADWICK, FULLERTON, ELLIS, and CROW, JJ., concur.